UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DWAYNE ANTHONY BENNETT,                      :
                                             :
                          Plaintiff,         :
                                             :           **OPINION AND ORDER**
            -against-                        :           14-CV-5700 (DLI)
                                             :
CAROLYN W. COLVIN,                           :
Acting Commissioner of Social Security,      :
                                             :
                          Defendant.         :
------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

On November 17, 2010, Plaintiff Dwayne Anthony Bennett ("Plaintiff") filed an application for Social Security disability insurance benefits ("DIB") under the Social Security Act (the "Act"), alleging disability beginning on December 15, 2009. *See* Certified Administrative Record ("R."), Dkt. Entry No. 19 at 209, 265. On May 12, 2011, his application was denied and he timely requested a hearing. *Id.* at 210, 215. On July 16, 2012, Plaintiff appeared with his representative, and testified at a hearing before Administrative Law Judge Harvey Feldmeier (the "ALJ"). *Id.* at 177-208. By decision dated January 25, 2013, the ALJ concluded Plaintiff was not disabled within the meaning of the Act. *Id.* at 164-171. On August 11, 2014, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *Id.* at 1-5.

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g). *See* Complaint ("Compl."), Dkt. Entry No. 1. The Commissioner moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking affirmation of the denial of benefits. *See* Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Mem."), Dkt. Entry No. 15. Plaintiff cross-moved for judgment on the

pleadings, seeking reversal of the Commissioner's decision or, alternatively, remand. *See* Mem. in Supp. of Pl.'s Cross Mot. ("Pl. Mem."), Dkt. Entry No. 17. For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted and Plaintiff's motion for judgment on the pleadings is denied. The instant action is dismissed.

## BACKGROUND[1]

### A.    Non-Medical and Self-Reported Evidence

Plaintiff was born in 1972.[2] R. at 183. He graduated from high school and completed one semester of college. *Id.* 307, 187. After college, Plaintiff served in the United States Navy from 1993 to 1997. *Id.* at 187. He worked as a baker from 1997 to 1999, as a courier for FedEx from 1999 to 2001, and as a corrections officer with the New York City Department of Corrections ("DOC") from 2001 to 2010. *Id.* at 307. On December 8, 2010, Plaintiff retired from DOC and began receiving a monthly pension of $3,900. *Id.* at 187, 356.

On February 9, 2011, Plaintiff completed a "function report," in which he stated that, on an average day, he ate, read, took naps, went for walks, watched television, and spent time with his son. *Id.* at 322. Plaintiff cared for his son every other weekend, with the assistance of Plaintiff's mother. *Id.* at 323. He did not sleep well, even with the use of a continuous positive airway pressure machine ("CPAP"). Plaintiff grilled, baked, and made salads on a weekly basis, but his mother prepared most his meals. *Id.* at 324. Plaintiff took care of his own personal needs, grooming, and medication. *Id.* He cleaned his room and sometimes he did the dishes, taking rests as needed. *Id.*

---

[1] Having thoroughly and carefully reviewed the administrative record, the Court finds the Commissioner's factual background accurately represents the relevant portions of said record. Accordingly, the following background is taken substantially from the background section of the Commissioner's brief, except as otherwise indicated.

[2] Plaintiff was 37 years old on the alleged onset date, December 15, 2009. As such, Plaintiff was a "younger person" as defined in 20 C.F.R. § 404.1563(c).

Plaintiff went outside every day, weather permitting. *Id.* at 325. He used public transportation, went shopping on his own, and attended church regularly. *Id.* at 325-326. Plaintiff could not walk for more than one block before needing to rest because of shortness of breath and chest pain. *Id.* at 327. He could climb stairs, but experienced similar symptoms after a short duration. *Id.* Extended periods of standing fatigued him, and he was not capable of squatting. *Id.* He reported no problems sitting or using his hands, although kneeling and reaching caused pain if done for extended periods. *Id.*

On July 16, 2012, Plaintiff testified before the ALJ that he lived with his mother and father. *Id.* at 183. Plaintiff was 5'11" and weighed 300 pounds. *Id.* at 184. Plaintiff drove himself to the store to purchase food, and he regularly rode the bus. *Id.* at 184-185. Plaintiff spent a majority of his time at home, where he used the computer, watched television, and went outside for walks. *Id.* at 200-201. While seated, he experienced swelling in his legs, which he usually remedied by standing up and walking around. *Id.* at 197. He stated that he never slept for more than three or four hours at a time, including during the night, and that his CPAP machine did not help. *Id.* at 194. His doctors recommended that he lose weight by adhering to a low salt diet, taking medication, and walking at least one block every day. *Id.* at 194-196. Plaintiff stated that it was difficult for him to exercise because he always was tired and ran out of breath after walking about one block. *Id.* at 196. As for his diet, Plaintiff claimed that he had made significant changes, but had not lost weight. *Id.* at 194.

Regarding his time as a corrections officer, Plaintiff testified that he was placed on light duty from 2007 to 2009 because he had undergone corneal transplant surgery. *Id.* at 190. During this time, he worked in the records room or at the front desk. *Id.* Although he was physically present at the facility for a full eight-hour work day, he worked for approximately two hours per

day, and spent the other six hours taking an extended break.  *Id.* at 190-191.  The last time he was on full duty status overseeing inmates was sometime in 2009 or 2010.  *Id.* at 191-192.

**B.     Medical Evidence**

### 1.     Medical Evidence Prior to December 15, 2009

On October 5, 2005, Plaintiff had cornea transplant surgery on his left eye.  *Id.* at 360.  In April 2007, Plaintiff went to Brookdale Hospital complaining of shortness of breath induced by walking or climbing stairs.  *Id.* at 367-395.  Doctors performed chest x-rays, an echocardiogram, and a cardiac catheterization.  *Id.*  These tests revealed cardiomegaly, congestion, and a left ventricular ejection fraction of 25-30%.  *Id.*  Plaintiff was diagnosed with non-ischemic cardiomyopathy, normal coronary arteries, systolic and diastolic left and right ventricle dysfunction, and severe pulmonary hypertension.  *Id.* at 388.  Doctors recommended medical therapy, a defibrillator, and an evaluation for sleep apnea.  *Id.*

On June 8, 2007, Augusto Dino Paiusco, M.D. performed an initial cardiac evaluation on Plaintiff.  *Id.* at 580.  Plaintiff informed Dr. Paiusco that he was feeling better and that his cardiac medication had improved his exercise capacity.  *Id.*  Plaintiff reported no chest tightness, but stated that he continued to experience dyspnea after one block of walking or while going up stairs.  *Id.*  Plaintiff was obese and his blood pressure was 140/94 left and 144/90 right.  *Id.* at 581.  His lungs were clear, and there was no murmur, rub, gallop, click, or heave.  *Id.*  Plaintiff did not have edema in his extremities.  *Id.*  Dr. Paiusco suspected that Plaintiff likely had congestive heart failure ("CHF") and sleep apnea.  *Id.*  Dr. Paiusco recommended preventative therapies for the CFH and a sleep study for the sleep apnea.  *Id.*  On August 11, 2007, an echocardiogram showed that Plaintiff had an ejection fraction of 30-35%.  *Id.*

From October 5, 2009 to October 9, 2009, Plaintiff was hospitalized at Beth Israel Medical Center ("Beth Israel") for an abscess. *Id.* at 423-41. A cardiac examination showed Plaintiff's heart had a regular rate and rhythm. *Id.* at 430. From November 8, 2009 to November 11, 2009, Plaintiff again was hospitalized at Beth Israel for an unproductive cough and shortness of breath. *Id.* at 397-422, 443-454. Plaintiff's heart had a regular rhythm and there was pedal edema in the lower extremities. *Id.* at 454. A chest x-ray showed no evidence of pulmonary embolus, multiple pulmonary nodules, most consistent with an infection, and an enlarged pulmonary artery, most consistent with pulmonary hypertension. *Id.* at 447. Plaintiff was diagnosed with CHF, pulmonary hypertension, other chronic pulmonary disease, and obstructive sleep apnea. *Id.* at 397.

### 2. Medical Evidence after December 15, 2009

On December 24, 2009, Plaintiff saw Maurice Alwaya, M.D., with complaints of shortness of breath and coughing and fatigue only upon exertion. *Id.* at 582. He denied wheezing, edema, or increased daytime somnolence. *Id.* Plaintiff weighed 277 pounds, and his blood pressure was 134/100. *Id.* at 583. Upon examination, Plaintiff's lungs were clear to auscultation bilaterally, with no wheezes, rhonchi, or rales, and decreased air entry. *Id.* Examination of Plaintiff's heart revealed no murmurs, and a regular rate and rhythm. *Id.* There was trace ankle edema. *Id.* Dr. Alwaya stated there could be a cardiac cause for Plaintiff's shortness of breath. *Id.* 583. Plaintiff was diagnosed with shortness of breath, cough, hypoxia, hemoptysis, obesity, sleep apnea, secondary pulmonary hypertension, congestive heart disease, possible asthma exacerbation, and hypertension. *Id.* Plaintiff was advised to see Dr. Paiusco immediately, continue using his CPAP and try to lose weight. *Id.* at 584. On March 25, 2010, Plaintiff saw Dr. Paiusco and reported he was doing better and was compliant with his diet. *Id.* at 585. Plaintiff weighed 280 pounds and was advised to lose weight. *Id.*

On April 6, 2010, Plaintiff saw August A. Feola, M.D, complaining of a boil on his back. *Id.* at 497-99. Plaintiff weighed 284 pounds, and his blood pressure was 130/80. *Id.* at 497. Upon examination, Plaintiff was in no acute distress. *Id.* A cardiac examination was within normal limits with no murmurs, gallops, rubs, thrills, heaves, or lifts. *Id.* His chest was resonant to percussion with normal breath sounds bilaterally, without evidence of rales, rhonchi, wheezes or rubs. *Id.* There was no edema. *Id.* Dr. Feola diagnosed sleep apnea, hypertension, acute bronchitis, cardiomyopathy, obesity, CHF, hyperuricemia, and abscess. *Id.* at 498. Plaintiff was also diagnosed as non-compliant with diet, taking medication, keeping follow-up appointments, and CPAP use. *Id.*

On May 13, 2010, Plaintiff complained to Dr. Paiusco of dyspnea on exertion and occasional edema. *Id.* 578. He had run out of his congestive heart failure medication. *Id.* He denied any chest tightness, squeezing, or heaviness. *Id.* Plaintiff weighed 281 pounds, and his blood pressure was 144/80. *Id.* Examination revealed diminished breath sounds in both lung fields and trace edema of the bilateral extremities. *Id.* Dr. Paiusco diagnosed non-ischemic cardiomyopathy with class II-III symptoms. *Id.* Dr. Paiusco stated that "the remainder of [Plaintiff's] other problems are chronic and stable." He further stressed the "need for absolute compliance" and reinforced dietary restrictions and nutritional supplementation. *Id.*

On June 15, 2010, Plaintiff told Dr. Paiusco that he experienced dyspnea when walking less than two blocks. *Id.* at 576. On this visit, Plaintiff weighed 295 pounds. *Id.* On August 26, Dr. Paiusco noted no positive cardiac examination findings and no edema. *Id.* at 574. Plaintiff weighed 280 pounds. *Id.*

Dr. Feola's examination findings and diagnoses on September 18, 2010 were substantially similar to those of April 6, 2010. *Id.* at 500-02. Chest, cardiac, musculoskeletal, and neurological

examinations were all within normal limits. *Id.* at 500. The only significant differences from the April 6 visit were that Plaintiff weighed 295.5 pounds, and he had not followed up with another doctor regarding his enlarged tonsils. *Id.* Dr. Feola examined Plaintiff again on September 27, 2010. *Id.* at 508. The examination findings and diagnoses were similar to those from the September 18 visit, except Plaintiff tested positive for herpes simplex virus; he had no lesions and said he always exercised safe sexual practices. *Id.*

On September 30, 2010, Dr. Paiusco noted no positive cardiac examination findings. *Id.* 573. Plaintiff's blood pressure was 120/70, and he weighed 296 pounds. *Id.* Dr. Paiusco encouraged him to start walking. *Id.*

On February 9, 2011, Dr. Feola completed a report from the New York State Office of Temporary and Disability Assistance concerning Plaintiff's condition. *Id.* at 465-69. He stated that he had first treated Plaintiff in May 2005 for hypertension that was well controlled. *Id.* at 465, 466. Plaintiff's diagnoses were severe sleep apnea, hypertension, cardiomyopathy, obesity, CHF, pulmonary hypertension, hyperuricemia, and asthma. *Id.* at 465. His primary symptom was shortness of breath. *Id.* at 465-66. Dr. Feola opined that Plaintiff was limited in his ability to push and/or pull, although he did not specify to what degree. *Id.* at 468. Dr. Feola stated that Plaintiff was limited in lifting and carrying, but provided no other information. *Id.* at 469. He said Plaintiff could stand and/or walk less than two hours per day and sit less than six hours per day. *Id.*

On March 24, 2011, Benjamin Kropsky, M.D., an internist, consultatively examined Plaintiff. *Id.* at 470-73. Plaintiff reported a history of hypertension and CHF since 2007. *Id.* at 470. He said he had been hospitalized in October 2010 and reported that he had a very low ejection fraction. *Id.* Dr. Kropsky noted Plaintiff's hospitalization history: 2006 and 2008 for corneal transplants, and twice in 2009 and once in 2010 for CHF. *Id.* Plaintiff said he tired easily; he got

short of breath and tired after walking one and one-half block, and had to climb stairs very slowly. *Id*. Plaintiff said he had sleep apnea and used a CPAP machine that had decreased his awakening at night although he still got up several times. *Id*. His medications were Hydrochlorothiazide, Bidil, Furosemide, Digoxin, and Carvedilol. *Id*. Plaintiff said that he lived with his mother. *Id*. at 471. He cooked and cleaned two times per week, shopped and engaged in child care once a week, and showered, bathed, and dressed daily. *Id*. He watched television, listened to the radio, and read. *Id*. Upon examination, Plaintiff weighed 300 pounds, and his blood pressure was 170/100. *Id*. He appeared to be in no acute distress. *Id*.

Plaintiff's gait was normal, and he could walk on heels and toes without difficulty. *Id*. He needed no help getting on and off the examination table and was able to rise from a chair without difficulty. *Id*. Plaintiff's lungs were clear to auscultation, and percussion was normal. *Id*. at 472. His heart displayed normal rhythm without any murmur, gallop, or rub. *Id*. Plaintiff had full ranges of motion in his cervical spine, lumbar spine, shoulders, elbows, forearms, and wrists. *Id*. Bilateral hip extension and rotation were full; flexion was 70 to 80 degrees. *Id*. Straight leg raising created pain in the thigh on the right at 60 to 70 degrees and on the left at 45 degrees. *Id*. There were no sensory deficits or muscle atrophy. *Id*. Plaintiff had full strength (5/5) in the upper and lower extremities. *Id*. Hand and finger dexterity was intact, and he had full grip strength (5/5) bilaterally. *Id*. Dr. Kropsky diagnosed hypertension with recurrent CHF and systolic dysfunction and sleep apnea. *Id*. at 473. He opined that Plaintiff had a mild to moderate limitation for prolonged walking and climbing stairs due to shortness of breath and fatigue. *Id*. Plaintiff was limited from activities that require moderate or greater exertion because of his cardiac condition. *Id*.

On March 31, 2011, Plaintiff told Dr. Paiusco that he was feeling better. *Id.* at 572. His blood pressure was 135/85, and he weighed 298 pounds. *Id.* There was trace edema. *Id.* Dr. Paiusco opined that Plaintiff's CHF was possibly resolved, and ordered an echocardiogram. *Id.* An echocardiogram performed on April 14, 2011, showed that Plaintiff's aortic, mitral, tricuspid, and pulmonic valves were within normal limits. *Id.* at 475. All chambers were normal in size. *Id.* There was mild concentric left ventricular hypertrophy. *Id.* The left ventricular ejection fraction ("LVEF") was 50% (low/normal). *Id.* The right ventricular systolic function was normal. *Id.* There was no pericardial effusion. *Id.*

Plaintiff saw Dr. Feola on April 18, 2011, to obtain clearance for a tonsillectomy scheduled for April 25. *Id.* at 518. Plaintiff stated that he had run out of his blood pressure medication two days earlier and was being noncompliant with his prescribed low-salt diet after going to a bachelor party. *Id.* Plaintiff weighed 295 pounds, and his blood pressure was 140/100. *Id.* Dr. Feola noted normal cardiac, musculoskeletal, chest, and neurological examinations. *Id.* There was no edema. *Id.* An electrocardiogram performed that day was abnormal. *Id.* at 512. Chest x-rays revealed no evidence of acute cardiopulmonary disease. *Id.* at 514. Plaintiff was cleared for surgery if his blood pressure was under 140/90 controlled. *Id.* at 520.

On May 10, 2011, E. Santos, M.D., a State agency medical consultant, reviewed the evidence. *Id.* 487-88. He referenced the April 2011 echocardiogram, and stated that the ejection fraction was 50%. *Id.* at 487. There was mild left ventricular hypertrophy, but that had no clinical significance. *Id.* Dr. Santos opined that Plaintiff could lift and carry ten to twenty pounds, and stand and walk for six hours per day. *Id.*

On July 12, 2011, Plaintiff saw Dr. Feola for a follow-up concerning his hypertension and cardiomyopathy. *Id.* at 521-23. Dr. Feola noted that Plaintiff had been compliant with taking his

medication, but had not been following his diet and was eating large amounts of salty foods. *Id.* at 521. Plaintiff weighed 289 pounds, and his blood pressure was 140/100. *Id.* The cardiac, musculoskeletal, and neurological examinations were within normal limits. *Id.* There was no edema. *Id.* Plaintiff's chest showed normal breath sounds bilaterally. *Id.* Dr. Feola diagnosed Plaintiff with sleep apnea, hypertension, acute bronchitis, cardiomyopathy, and obesity. Plaintiff was also diagnosed as non-compliant with diet, medication, follow-ups, and CPAP use. *Id.* In a letter written that day, Dr. Feola stated that Plaintiff had recently retired after ten years as a corrections officer. *Id.* at 482. He noted that Plaintiff took multiple medications and had episodes of shortness of breath, chest pain, dizziness, and palpitations. *Id.* Dr. Feola stated that "[Plaintiff] was disabled from NYC Dept. of Corrections on the cardiac disability bill and should be considered disabled." *Id.*

On August 1, 2011, Plaintiff saw Dr. Feola for a rash. *Id.* at 524-26. He weighed 292 pounds, and his blood pressure was 140/90. *Id.* at 524. Examination findings remained normal, and diagnoses were identical to those in July 2011. *Id.* 524-25. In a letter dated August 2, 2011, Dr. Feola stated that Plaintiff should not be doing any type of work for at least twelve months due to cardiomyopathy. *Id.* at 483.

On August 2, 2011, Plaintiff went to Beth Israel complaining that he had experienced a rash on his arms, back, and trunk for the previous month. *Id.* at 598-610. He said he was not experiencing chest pains, shortness of breath, or edema. *Id.* at 599. Cardiac, respiratory, musculoskeletal, and neurological examinations were all within normal limits. *Id.* 600. Plaintiff was diagnosed with scabies and discharged. *Id.*

On November 7, Plaintiff saw Dr. Feola complaining of pimples on his penis. *Id.* at 527. The doctor noted that Plaintiff had never taken his herpes medication because Plaintiff believed

he did not have herpes. *Id*. Plaintiff said he had not taken his blood pressure medication that day. *Id*. His blood pressure was 170/122 and he weighed 302 pounds. *Id*. Chest, cardiac, musculoskeletal, and neurological examinations were all within normal limits. *Id*. There was no edema. *Id*.

On March 7, 2012, Plaintiff told Dr. Feola that he had run out of his water pill and heart medication and was not using the CPAP machine. *Id*. at 534-37. He had a penile rash. *Id*. at 534. Plaintiff said he checked his blood pressure at home and usually got readings of 120/90. *Id*. That day, his reading was 190/120, and he weighed 306 pounds. *Id*. Chest, cardiac, musculoskeletal, and neurological examinations were all within normal limits. *Id*. at 534-35. There was no edema. *Id*. at 535. On March 27, Plaintiff followed up with Dr. Feola for the penis irritation. *Id*. at 538.

On March 8, 2012, Dr. Paiusco noted that Plaintiff said he was feeling well. *Id*. 569. Plaintiff's blood pressure was 150/100, but he had run out of his medication. *Id*. Plaintiff's CHF was stable. *Id*. Dr. Paiusco completed a Cardiac Impairment Questionnaire, wherein he diagnosed: CHF, non-ischemic; cardiomyopathy with 56% ejection fraction; class II-III cardiac disease; and dyspnea on exertion. *Id*. 545-550. Dr. Paiusco referred to the echocardiogram in January 2010 showing a LVEF of 33%, and another echocardiogram in April 2012 showing a LVEF of 56%. *Id*. 546. Clinical findings were shortness of breath, fatigue, weakness, and occasional edema. *Id*. 545. Plaintiff's primary symptoms were dyspnea on exertion and fatigue. *Id*. at 546. Dr. Paiusco opined that Plaintiff could sit for four hours total and stand/walk for two hours total in an eight-hour workday. *Id*. at 547. He could occasionally lift and carry up to ten pounds. *Id*. 548. Plaintiff's condition would result in less than one absence from work per month. *Id*. Fatigue would periodically interfere with his attention and concentration and he was capable of low stress work. *Id*.

On April 2, 2012, Dr. Paiusco described Plaintiff's cardiac system as stable and noted a great increase in ejection fraction. *Id.* at 568. Plaintiff weighed 295 and his blood pressure was 122/76. *Id.*

On June 2, 2012 Dr. Feola noted that Plaintiff was in no acute distress. *Id.* at 539. Plaintiff weighed 310 pounds, and his blood pressure was 120/80. *Id.* Chest, cardiac, musculoskeletal, and neurological examinations were all within normal limits. *Id.* There was no edema. *Id.* Dr. Feola completed a Multiple Impairment Questionnaire and diagnosed Plaintiff with cardiomyopathy (LVEF 25-30%), hypertension, CHF class II-III, and sleep apnea. *Id.* at 552. Testing consisted of an echocardiogram (LVEF approximately 30%) and positive sleep studies. *Id.* at 553. Symptoms and clinical findings were: shortness of breath, swelling of the legs, and severe fatigue and weakness. *Id.* at 552-53. Dr. Feola opined that Plaintiff was able to sit for four hours total (not continuously) and stand/walk for two hours total in an eight-hour workday. *Id.* at 554. He could occasionally lift and carry up to ten pounds. *Id.* at 555. He had significant limitations performing repetitive reaching, handling, fingering, and lifting due to dyspnea on exertion. *Id.* Dr. Feola opined that Plaintiff was markedly limited from using his arms for reaching. *Id.* at 556. His fatigue was likely to increase in a competitive work environment and would frequently interfere with his attention and concentration. *Id.* 556-67. Dr. Feola concluded that Plaintiff was incapable of tolerating even low stress work, and that he would need to take breaks of 20 minutes or more at unpredictable intervals throughout the workday. *Id.* Dr. Feola stated that the symptoms and limitations described in the questionnaire had been present since 2009. *Id.* at 558.

On July 2, 2012, Plaintiff told Dr. Paiusco that he had problems standing and sleeping, increased fatigue, and decreased exercise capacity. *Id.* at 567. His blood pressure was 110/70, and he weighed 295 pounds. *Id.* There was no edema. *Id.*

**C.      Evidence Submitted to Appeals Counsel After the ALJ Issued His Decision**

On March 13, 2013, Plaintiff underwent a sleep study at home at the recommendation of his dentist, Jacques Doueek, D.D.S. *Id.* at 9-10. Very severe sleep-disordered breathing was detected, and use of a CPAP was recommended. *Id.* at 9. Plaintiff obtained another CPAP. *Id.* at 11. On April 25, 2013, he told his physician that he had been using the machine for three weeks and had slept throughout the night. *Id.* He stated that he traveled frequently without the CPAP and asked for an oral sleep appliance. *Id.*

Plaintiff was hospitalized at Beth Israel from May 13 to May 15, 2013. *Id.* at 8, 12-52, 54-157. At admission, he complained of shortness of breath, feeling extremely weak, and having an unproductive cough for two weeks. *Id.* at 24, 38, 44. Upon examination, he appeared to be in no acute distress and was ambulatory. *Id.* at 26, 41, 44. His blood pressure was 170/110, and he weighed 322 pounds. *Id.* at 44. The cardiac examination was within normal limits and Plaintiff did not complain of chest pain. *Id.* 26, 41, 44. His airways were open, and his breathing was spontaneous and non-labored. *Id.* at 26. There was bipedal edema. *Id.* at 46. The musculoskeletal examination was normal, and no neurologic deficits were found. *Id.* On May 14 and 15, 2013, Plaintiff denied having shortness of breath or chest pain, and said he was feeling better. *Id.* at 48, 50, 51. Upon discharge, his chief diagnosis was CHF exacerbation. *Id.* at 8, 12.

## DISCUSSION

**A.      Standard of Review**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the

final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982) (internal citations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999) (quotations omitted).

**B.**    **Disability Claims**

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. § 404.1520. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education and work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"). *See* 20 C.F.R. § 404.1520(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. § 404.1520(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. § 404.1520(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(g).

### C.     The ALJ's Decision

On January 25, 2013, the ALJ issued a decision denying Plaintiff's claims. *Id.* at 164-171. The ALJ followed the five-step procedure in making his determination that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with some additional environmental restrictions, and, therefore, was not disabled. *Id.* at 167, 171. At the first step, the ALJ determined that, although Plaintiff alleged a disability since December 15, 2009, he worked as a corrections officer until December 7, 2010. *Id.* at 166. Thus, the ALJ found that Plaintiff had engaged in substantial gainful activity until that date, and had not engaged in substantial gainful activity since December 8, 2010. *Id.* At the second step, the ALJ found the following severe impairments: heart disease associated with cardiomyopathy, CHF, pulmonary hypertension, and obesity with sleep apnea. *Id.* at 167. At the third step, the ALJ concluded that Plaintiff's impairments, in combination or individually, did not meet or equal an impairment included in the Listings. *Id.*

At the fourth step, the ALJ found that Plaintiff could perform sedentary work as defined in 20 CFR § 404.1567(a), except that he must avoid concentrated exposure to environmental irritants. *Id.* The ALJ found that Plaintiff was unable to perform his past relevant work as a corrections officer, which was a medium exertion position, because Plaintiff was limited to sedentary work. *Id.* at 170.

The ALJ found that, during the relevant period, Plaintiff "has been limited to sedentary work with lifting up to 10 pounds; standing and/or walking up to two hours in an eight-hour [work]day; and, sitting and working for six hours in an eight hour [work]day." *Id.* As to the opinions of Drs. Feola and Paiusco, the ALJ found that they were "not consistent with the medical evidence which documents increasing exercise tolerance and fails to document complaints of

significant problems with shortness of breath or other cardiopulmonary symptoms which might …

limit the ability to perform sedentary work." *Id.* The ALJ found that Plaintiff's medically

determinable impairments could reasonably be expected to cause the alleged symptoms, but that

Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms

were not credible to the extent they were inconsistent with the "objective medical evidence and

[Plaintiff's] reports of daily activities." *Id.*

At the fifth step, "considering [Plaintiff's] age, education, work experience, and residual

functional capacity," the ALJ found that "there are jobs in the national economy that [Plaintiff]

can perform" according to the applicable Medical-Vocational Guidelines at 20 C.F.R. 404.1569.

*Id.*

## D. Analysis

The Commissioner moves for judgment on the pleadings, seeking affirmance of the denial

of Plaintiff's benefits on the grounds that the ALJ applied the correct legal standards to determine

that Plaintiff was not disabled and that the factual findings are supported by substantial evidence.

*See generally* Def. Mem. Plaintiff cross-moves for judgment on the pleadings, contending the ALJ

incorrectly: (1) discounted the opinions of Drs. Feola and Paiusco under the treating physician

rule; (2) discredited Plaintiff's statements concerning the intensity, persistence, and limiting effects

of his symptoms. *See* Pl. Mem at 7-15. Alternatively, Plaintiff seeks remand. *See Id.* at 15.

Upon review of the record, the Court finds that the ALJ applied the correct legal standards

and his decision is supported by substantial evidence. Plaintiff's arguments to the contrary are

meritless.

### 1. Unchallenged Findings

The ALJ's findings as to steps one, two, and three are unchallenged. *See generally Id.*

Upon a review of the record, the Court concludes that the ALJ's findings at steps one through three are supported by substantial evidence.

### 2. Plaintiff's RFC

#### a. The ALJ's RFC Assessment

The ALJ found that Plaintiff retained the RFC to perform sedentary work, with the additional restriction that Plaintiff avoid concentrated exposure to environmental irritants. *Id.* at 167. Sedentary work involves lifting no more than ten pounds, and occasionally lifting or carrying articles like docket files or small tools, with sitting for approximately six hours and standing or walking for no more than two hours in an eight-hour workday. *See* 20 C.F.R. § 404.1567(a); *see also* SSR 96-9p. Sedentary work does not require the ability "to sit for six unbroken hours without standing up or shifting position during a work day." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

Plaintiff had the burden of proving that he was unable to perform sedentary work. *See Poupore v. Astrue*, 566 F. 3d 303, 305-06 (2d Cir. 2009) (explaining that at the fifth step, the Commissioner has the "limited burden" of showing "that there is work in the national economy that the claimant can do" and that the Commissioner "need not provide additional evidence of the claimant's residual functional capacity"). During the relevant period (December 8, 2010 through January 25, 2013), there is no medical evidence indicating that Plaintiff was unable to perform sedentary work, as noted by the ALJ. The ALJ was entitled to rely on the lack of findings regarding Plaintiff's physical limitations in assessing his capacity to perform sedentary work. *See Dumas v. Schweiker*, 712 F. 2d 1545, 1553 (2d Cir.1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say."); *accord Diaz v. Shalala*, 59 F. 3d 307, 315 (2d Cir. 1995) (declining plaintiff's request to remand for further proceedings to solicit evidence from

plaintiff's physicians as to whether plaintiff could sit for prolonged periods because each of his physicians evaluated his physical capabilities and the ALJ was entitled to rely on the absence of that finding in determining that plaintiff could perform sedentary work).

Substantial evidence in the record supported the ALJ's RFC assessment. Notably, Plaintiff stated that, he shopped for his own food occasionally, prepared some of his own meals, attended to his own daily personal needs, cared for his son at times, attended church regularly, and cleaned dishes. *See generally*, R. 179-208, 322-329. He walked frequently, and was capable of driving a car and using public transportation. *Id.* at 200, 184-186. Plaintiff reported that he only had trouble sitting sometimes, and when he experienced swelling in his legs from sitting, he stood up and walked around. *Id.* at 197. Plaintiff also elevated his legs to reduce swelling, but he also testified that his doctors never instructed him to elevate his legs. *Id.* at 198. Plaintiff testified that he had no problems using his hands or lifting objects up to ten pounds. *Id.* at 199-200, 327. These activities support the ALJ's findings that Plaintiff's RFC enabled him to perform sedentary work.

Additionally, medical evidence from the relevant period and after supports the ALJ's RFC assessment. With treatment, Plaintiff's ejection fractions showed improvement during the relevant period, increasing from 33% in January 2010, to 50% in April 2011, to 56% in April 2012. *Id.* at 545-546, 475. Plaintiff's cardiac examinations were within normal limits regularly, or showed no significant positive findings. *Id.* at 567-70, 572-78, 585. Plaintiff was consistently diagnosed with no edema or only trade edema. *Id.* at 497, 500, 508, 519, 521. Moreover, Plaintiff only experienced shortness of breath upon exertion, such as walking for more than one block. *Id.* at 470-473, 545.

The record indicates that Plaintiff's shortness of breath upon exertion and fatigue would have limited Plaintiff from engaging in moderate activities, such as those he performed as a

corrections officer. However, these impairments do not undermine the ALJ's RFC assessment that Plaintiff was capable of performing sedentary work. Accordingly, the Court finds that the medical and non-medical evidence cited above constitute substantial evidence supporting the ALJ's RFC finding.

### b. Application of Treating Physician Rule to the Opinions of Drs. Feola and Paiusco

Plaintiff contends that the ALJ erred in analyzing the opinions of Drs. Feola and Paiusco. Pl. Mem. at 8-12. An ALJ must give controlling weight to the opinion of a treating physician with respect to "the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 416.927(c)(2); *see also Shaw v. Chater*, 221 F. 3d 126, 134 (2d Cir. 2000). A claimant's treating physician is one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F. 2d 43, 46 (2d Cir. 1988). A treating physician's medical opinion regarding the nature and severity of a claimant's impairment is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record." *Burgess v. Astrue*, 537 F. 3d 117, 128 (2d Cir. 2008) (quotation marks and alteration omitted). The Second Circuit has noted that "[w]hile the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Lazore v. Astrue*, 443 F. App'x 650, 652 (2d Cir. 2011) (quoting *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002)). Where a treating source's opinion is not given controlling weight, the proper weight accorded by the ALJ depends upon several factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."

*Clark v. Comm'r of Soc. Sec.*, 143 F. 3d 115, 118 (2d Cir. 1998); *see also* 20 C.F.R. § 416.927(c)(2)-(6). The ALJ must clearly state his or her reasons for not giving controlling weight to a treating physician's opinion. *See Halloran v. Barnhart*, 362 F. 3d 28, 31-32 (2d Cir. 2004).

Plaintiff contends that, under the treating physician rule, the ALJ should have given controlling weight to the opinions of Drs. Feola and Paiusco, because their opinions "relied on appropriate clinical and diagnostic testing." Pl. Mem. at 8. In particular, he points to the fact that both doctors based their opinions on clinical evidence indicating shortness of breath, fatigue, and edema, as well as the echocardiogram test results. *Id.* (citing R. at 545-546, 552-553). Plaintiff further contends that the ALJ's determination failed to identify substantial evidence contradicting the opinions of Drs. Feola and Paiusco. *Id.* at 9. According to Plaintiff, the only contradictory medical evidence was the opinion of Dr. Kropsky. *Id.* at 10. However, Plaintiff maintains that the ALJ's reliance on this opinion was inappropriate because Dr. Kropsky was a one-time examining consultant whose opinion was not entitled to significant weight. *Id.* at 10-11 (citing *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (additional citations omitted).

Contrary to Plaintiff's assertions, the Court finds that the ALJ correctly discredited the opinions of Drs. Feola and Paiusco to the extent they were inconsistent with the conclusion that Plaintiff was incapable of performing sedentary work. One of the more significant limitations found by both doctors was that Plaintiff could sit for only four hours in an eight-hour workday. R. 547, 554. However, as the ALJ correctly observed, this conclusion is wholly inconsistent with Plaintiff's own testimony regarding his daily activities, particularly the fact that he spent most of his day sitting. *Id.* at 200. The ALJ also correctly found that limitations on Plaintiff's ability to sit for extended periods were not supported by evidence in the record. Medical examinations revealed, at most, trace edema sometimes, and at other times, no edema at all. Plaintiff also

testified that when he had trouble sitting, he stood up and walked around. R. 197. *See Halloran*, 362 F.3d at 33 ("The regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."). Thus, the opinions of Drs. Feola and Paiusco concerning Plaintiff's ability to sit were contradicted by substantial evidence, and were properly rejected by the ALJ.

Other evidence in the record also contradicts the opinions of Drs. Feola and Paiusco that Plaintiff was incapable of sedentary work. As noted above, Plaintiff's own testimony regarding his daily activities suggest Plaintiff is capable of sitting six hours per day, standing or walking for two hours per day, and occasionally lifting or carrying small items. In fact, Drs. Feola and Paiusco themselves opined that Plaintiff was capable of performing the latter two requirements of sedentary work, *i.e.* standing/walking and carrying small objects. *See* R. at 547-548 (Dr. Paiusco stated that Plaintiff capable of walking/standing two hours per day and occasionally carrying 5-10 pounds); *see also Id.* at 554-555 (Dr. Feola, same). Additionally, Dr. Feola stated that Plaintiff had experienced the symptoms and limitations indicating an inability to perform sedentary work since 2009, but Plaintiff worked as a corrections officer until the end of 2010. R. 558. The ALJ was entitled to consider this "internal inconsistency … [as] a reasonable basis to believe that [the opinion] was not prepared with the type of attention to detail indicating reliability." *Mainella v. Colvin*, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014) (citing *Michels v. Astrue*, 297 F. A pp'x 74, 76 (2d Ci r.2008)).

As to the opinions of Drs. Kropsky and Santos, the Second Circuit permits "the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record." *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing *Schisler v.*

*Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993)). *Oliphant v. Astrue*, 2012 WL 3541820, at *19 (E.D.N.Y. Aug. 14, 2012) ("The Second Circuit has held that if the record supports a consultative, non-examining medical opinion, the ALJ may accord that opinion greater weight than the opinion of a treating physician."). Here, the same medical and non-medical evidence that contradicts the treating physician's opinions supports the opinions of the consultative and nonexamining sources. Accordingly, the ALJ was entitled to give the opinions of Drs. Kropsky and Santos greater weight than those of the treating physicians in determining Plaintiff's RFC.

### c.      Plaintiff's Credibility

Plaintiff contends that the ALJ erred in discrediting his statements regarding the severity of his symptoms. Pl. Mem. at 12-15. The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability. *See Taylor v. Barnhart,* 83 F. App'x 347, 350 (2d Cir. 2003). However, the ALJ is afforded discretion to assess the credibility of a claimant and is not "required to credit [Plaintiff's] testimony about the severity of her pain and the functional limitations it caused." *Correale-Englehart v. Astrue,* 687 F.Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue,* 280 F. App'x 20, 22 (2d Cir. 2008)). In determining Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations. *See Peck v. Astrue,* 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010). First, the ALJ must consider whether there is a medically determinable impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b); SSR. 96-7p. Second, if the ALJ finds that the individual suffers from a medically determinable impairment that reasonably could be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work. 20 C.F.R. § 404.1529(c).

When the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The Second Circuit has stated that "[i]f the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, [she] must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Correale-Englehart*, 687 F. Supp. 2d at 435. When the ALJ neglects to discuss at length her credibility determination with sufficient detail to permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether her decision is supported by substantial evidence, remand is appropriate. *Id.* at 435-36; *see also Grosse v. Comm'r of Soc. Sec.,* 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding the ALJ committed legal error by failing to apply factors two through seven); *Valet v. Astrue*, 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (remanding the case where the ALJ "considered some, but not all of the mandatory" factors).

Turning to the instant action, the ALJ found that Plaintiff's "medically determinable impairments reasonably could be expected to cause the alleged symptoms," but that his statements "concerning the intensity, persistence, and limiting effect of [his] symptoms" were not credible to the extent that they were inconsistent with the RFC. R. 168. Substantial evidence in the record

supports the ALJ's credibility determination.

First, Plaintiff's self-reported activities of daily living undermine his statements concerning the intensity, persistence, and limiting effects of his symptoms. Moreover, as the Commissioner correctly notes, the ALJ considered Plaintiff's non-compliance with his doctor's orders as part of his credibility analysis. SSR 96-7p ("[A claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."); *see also Green v. Astrue*, 2007 WL 2746893, at *8 (S.D.N.Y. Sept. 17, 2007) (citing *Id.*). As further noted by the Commissioner, Plaintiff's non-compliance was substantial and consistent. Plaintiff repeatedly failed to refill his heart medication and high blood pressure medication. R. at 518, 527, 534, 569, 578. He also stopped using his CPAP machine based on his own subjective assessment that it was "not helping [him] at all," and against his doctors' instructions to continue using it. *Id*. at 195, 534. Significantly, Plaintiff did not follow his doctors' dietary restrictions despite the "need for absolute compliance." *Id.* at 498, 501, 509, 518, 519, 521, 522, 525, 528, 532, 540, 578. Accordingly, Plaintiff's daily activities and repeated non-compliance with treatment modalities support the ALJ's credibility determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted. Plaintiff's cross-motion for judgment on the pleadings is denied. The appeal is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
      March 30, 2016

_____/s/_____
DORA L. IRIZARRY
United States District Judge
